IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00083-SOM-1 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | CLINTON MAU'S MOTION FOR |
| | ) | COMPASSIONATE RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| CLINTON MAU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT CLINTON MAU'S
MOTION FOR COMPASSIONATE RELEASE**

I.      **INTRODUCTION.**

In 2003, Defendant Clinton Mau entered a guilty plea to one count of conspiring to possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(A), and 846.  In 2004, this court sentenced him to the mandatory minimum of 20 years in prison.  In 2018, Congress amended 21 U.S.C. § 841 as part of the First Step Act, but did not make that amendment retroactive. Under today's law, Mau's mandatory minimum sentence would be 15 years.

Mau now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  The primary basis for his motion is the recent amendment to 21 U.S.C. § 841.  Mau argues that the reduced sentence that he would receive today, along with his

susceptibility to COVID-19, justifies his early release.  This court disagrees.  After considering the First Step Act's changes to the applicable mandatory minimums, Mau's medical condition, his history, and his disciplinary record while incarcerated, this court concludes that Mau has not demonstrated that extraordinary and compelling circumstances warrant a reduction in his sentence.

**II.     ANALYSIS.**

Mau's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also

find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

    **A.** **Mau has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).**

Mau submitted an administrative compassionate release request to the warden of his prison on May 20, 2020, more than 30 days before he filed this motion. *See* ECF No. 145, PageID # 300. The Government is not contesting Mau's satisfaction of the exhaustion requirement. *See id*. Accordingly, this court finds that Mau has fulfilled the first requirement of § 3582(c)(1)(A).

    **B.** **This court has discretion in determining whether extraordinary and compelling reasons justify a reduced sentence.**

This court therefore turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. *United States v. Kamaka*, 2020 WL 2820139, at *2-3 (D. Haw. May 29, 2020); *see also United States v. Scher,* 2020 WL 3086234, at

*2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020).  In reaching that conclusion, this court noted that an Application Note to a relevant sentencing guideline was outdated.  This court did not view its discretion as limited by Sentencing Commission pronouncements that were at odds with the congressional intent behind recent statutory amendments.

As amended by Congress, § 3582(c)(1)(A) states that a court's conclusion that extraordinary and compelling circumstances warrant a reduction in sentence must be consistent with any *applicable* policy statements issued by the Sentencing Commission.  But following the First Step Act's amendments to § 3582(c)(1)(A), the Sentencing Commission did not adjust its statements to make them consistent with the statutory amendment.  A critical part of the statutory amendment was the provision allowing prisoners themselves to bring motions for compassionate release.  Previously, such motions had to originate with the Bureau of Prisons.  The Sentencing Commission did not adjust its own statements to reflect the statutory amendment, leaving in place statements premised on the Bureau of Prisons' exclusive authority to bring compassionate release motions.  This court reads such statements as inapplicable to motions brought directly by prisoners.  This court's exercise of discretion is consistent with the statutory amendment and at least the spirit of the

Sentencing Commission's approach.  *Kamaka*, 2020 WL 2820139, at *2-3.

The Government points out that other district judges have reached a different conclusion.  ECF No. 145, PageID # 318 (citing *United States v. Tufele*, 2020 WL 5223775 (D. Haw. Sept. 1, 2020)).  *Tufele*, which says that the Sentencing Commission's guidance is binding, relies on two Supreme Court decisions: *Dillon v. United States*, 560 U.S. 817 (2010), and *Stinson v. United States*, 508 U.S. 36 (1993).  In *Dillon*, the Supreme Court held that when a statute instructs courts to rule in a manner that is "consistent with the applicable policy statements issued by the Sentencing Commission," ordinarily, the policy statements are binding.  560 U.S. at 828-30.  And in *Stinson*, the Supreme Court held that commentary to the guidelines should be treated with the same deference as the guidelines themselves (unless the commentary is inconsistent with the Constitution, a statute, or the guideline itself).  508 U.S. at 39, 44-47.  *Tufele* therefore concluded that an Application Note to a sentencing guideline remained binding in the compassionate release context.  2020 WL 5223775 at *3-6.

Neither *Dillon* nor *Stinson* addressed a policy statement that had failed to account for the latest developments in the law.  In addressing Mau's motion, this court has before it an Application Note issued before the First Step Act made

significant changes to 18 U.S.C. § 3582(c)(1)(A). Under the old scheme, which allowed a court to consider a compassionate release request only if brought by the Director of the Bureau of Prisons on the inmate's behalf, astonishingly few compassionate release motions were brought. Following the 2018 statutory amendment, and in the context of the ongoing coronavirus pandemic, district judges are seeing a steady stream of motions by inmates themselves, which the Sentencing Commission's Application Note does not contemplate.[1]

  This court has previously examined Application Note 1 to section 1B1.13 of the Sentencing Guidelines, which relates to compassionate release motions. This court reads Application Note 1 as providing that extraordinary and compelling reasons warrant early release under any of four circumstances: if "(1) the defendant suffers from a terminal illness and certain other conditions are met; (2) the defendant suffers from a physical or mental condition that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to

---

[1] It appears that the Sentencing Commission has not had the opportunity to revise the policy statement in response to the First Step Act, because, since the passage of the First Step Act, the Sentencing Commission has had only two voting commissioners. *See, e.g.*, *United States v. Haynes*, 2020 WL 1941478, at *12 n.20 (E.D.N.Y. Apr. 22, 2020). The guidelines cannot be amended until two more voting commissioners are appointed to constitute a quorum. *Id.*

recover;' (3) certain family circumstances justify compassionate release; or (4) '[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, [the first three categories of reasons].'" *Kamaka*, 2020 WL 2820139, at *2 (quoting U.S.S.G § 1B1.13, Application Note 1).  Crucially, the final "catch-all" category applies only to the situation in which the Director of the Bureau of Prisons has made the required determination relating to compassionate release.

That "catch-all" made sense when only the Director of the Bureau of Prisons could bring a compassionate release motion.  The Sentencing Commission anticipated that the Director of the Bureau of Prisons, and not the courts, would rely on the four categories:

> A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant [falls under any of the four enumerated categories].  *The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.*

U.S.S.G § 1B1.13, Application Note 4 (emphasis added).  In other

words, the Sentencing Commission anticipated that the Director of the Bureau of Prisons would file a compassionate release motion whenever it determined that an inmate fell into one of the four enumerated categories of extraordinary and compelling circumstances. Even then, when a court considered the motion, it was expected to exercise discretion (after considering a broad range of criteria, such as the § 3553 factors, the defendant's medical condition, and the defendant's family circumstances). That is, when the Director of the Bureau of Prisons brought a motion to the court, the Sentencing Commission did not intend for the court to be bound by the four enumerated categories. In particular, the Sentencing Commission did not intend for the court to be bound by the Director of the Bureau of Prisons' determination that "other reasons" justified early release.

If courts were indeed bound by the "catch-all" category, and if that category only allowed the Director of the Bureau of Prisons to exercise discretion, then judicial review would be meaningless. Courts would have to determine that extraordinary and compelling circumstances existed every time the Director of the Bureau of Prisons made such a determination. Courts would be nothing more than a rubber stamp. That was not the vision the Sentencing Commission had even under the old scheme. Instead, in noting that a court was in "a unique position to determine whether the circumstances warrant a

reduction," the Sentencing Commission was clearly anticipating that courts would independently review such motions. U.S.S.G § 1B1.13, Application Note 4.

In sum, in Application Note 1, the Sentencing Commission addressed the four categories to the Director of the Bureau of Prisons, and not the courts. Those categories are not "applicable" to compassionate release motions brought by inmates themselves. *See United States v. Brooker*, --- F.3d ---, 2020 WL 5739712, at *4-6 (2d Cir. Sept. 25, 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."). Even if the commentary applies to motions filed by inmates, a court's exercise of discretion to make the determination formerly made by the Director of the Bureau of Prisons is consistent with the Sentencing Commission's understanding of the scope of a court's authority over the ultimate compassionate release decision. *See Kamaka*, 2020 WL 2820139, at *2.

In allowing inmate motions, Congress gave no indication that judicial discretion was more constrained with inmate motions than with Bureau of Prisons motions. It appears that Congress reasonably expected the Application Note to be amended. That did not occur, apparently because of administrative rather than policy reasons. As this court has already concluded, the outdated Application Note does not constrain this court's

9

discretion in determining whether extraordinary and compelling circumstances warrant a reduction in a sentence.

>       **C.  Mau has not demonstrated that extraordinary and compelling circumstances justify his early release.**

Mau contends that extraordinary and compelling circumstances justify his early release here. He relies primarily on the impact of the First Step Act on his sentence. This court sentenced him to the mandatory minimum of 20 years in prison, and he has served approximately 17 years of that sentence. Mau argues that because today the mandatory minimum would only be 15 years in prison,[2] he likely would have already been released had he been sentenced under today's law. ECF No. 139, PageID # 60.

This court has previously declined to rely on a statutory change as the sole consideration in granting a compassionate release request when Congress has not made the change retroactive. *United States v. Cisneros*, 2020 WL 3065103, at *3-4 (D. Haw. June 9, 2020). However, this court has held that a change in the law may be a relevant consideration to include among the factors being examined in determining whether extraordinary and compelling circumstances justify a sentence reduction. *Id.; accord United States v. Gouveia*, 2020 WL

---

[2] The law has changed to provide for a mandatory minimum of 15 years, not, as Mau's mother says in a letter attached to his motion, a maximum of 15 years. ECF No. 139-8, PageID # 126-27.

10

6065299, at *6 (D. Haw. Oct. 14, 2020). Under § 3582(c)(1)(A), a court must consider whether a reduced sentence would reflect the seriousness of the defendant's offense, promote respect for the law, provide just punishment for the offense, or afford adequate deterrence to criminal conduct. A change in the law under which a defendant would receive a reduced sentence if sentenced today could affect all of those considerations. *United States v. Lavatai*, 2020 WL 4275258, at *3 (D. Haw. July 24, 2020); *accord Gouviea*, 2020 WL 6065299, at *6. Thus, "a defendant who would now be subject to a reduced sentence and who is particularly vulnerable to COVID-19 might show entitlement to compassionate release." *Cisneros*, 2020 WL 3065103, at *3.

Mau contends that he is such a defendant. The CDC currently lists the following conditions as creating an increased risk of a severe illness from COVID-19:

    *Cancer

    *Chronic kidney disease

    *COPD (chronic obstructive pulmonary disease)

    *Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

    *Immunocompromised state (weakened immune system) from solid organ transplant

    *Obesity (body mass index [BMI] of 30 or higher but less than 40 or higher)
    *Severe Obesity (BMI of 40 or higher)

    *Sickle cell disease

>    *Smoking
>
>    *Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited October 13, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

>    *Asthma (moderate-to-severe)
>
>    *Cerebrovascular disease (affects blood vessels and blood supply to the brain)
>
>    *Cystic fibrosis
>
>    *Hypertension or high blood pressure
>
>    *Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines
>
>    *Neurologic conditions, such as dementia
>
>    *Liver disease
>
>    *Overweight (BMI of 25 or greater, but less than 30)
>
>    *Pregnancy
>
>    *Pulmonary fibrosis (having damaged or scarred lung tissues)
>
>    *Thalassemia (a type of blood disorder)
>
>    *Type 1 diabetes mellitus

*Id.*

Mau maintains that because of his hepatitis C and

asthma, if he contracts COVID-19,[3] he will be at risk of a severe illness. It is not clear from the record that either condition increases Mau's risk of complications from the coronavirus.

The CDC's guidance does suggest that hepatitis C might place Mau at risk:

> Currently, we have no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19. However, based on available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions, including people with liver disease, might be at higher risk for severe illness from COVID-19, particularly if the underlying medical conditions are not well controlled.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html#:~:text=Are%20people%20with%20hepatitis%20B,or%20having%20severe%20COVID%2D19 (last visited October 16, 2020). It therefore appears that the CDC believes that hepatitis C could increase an individual's risk of complications because hepatitis C causes liver disease.[4] *Id.* Mau, however, explains that he is

---

[3] COVID-19 is present at FCI Coleman, where Mau is housed. In its Opposition, the Government concedes that, as of September 24, 2020 "0.026 of the inmate population is infected." ECF No. 145, PageID # 305. That is better stated as 2.6 percent, which is not insignificant.

[4] Mau also argues that his hepatitis C could increase his risk of developing complications because the CDC states that individuals who have a weakened immune system might be at risk. ECF No. 139, PageID # 62. Specifically, the CDC has stated that individuals who have a weakened immune system "from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines"

a "hepatitis C carrier," which means that while he may "*eventually* develop chronic liver disease," he has not yet done so.  ECF No. 139, PageID # 61 (emphasis added) (quotation marks omitted).  The CDC has not specifically addressed whether individuals like Mau who have hepatitis C but have not yet developed symptoms or suffered liver damage are nevertheless at risk.

The CDC has also indicated that individuals with "moderate to severe" asthma could be at risk.  Mau has not even attempted to demonstrate that his asthma falls into that category.  Based on the present record, this court cannot conclude that his asthma places him at risk.  *See Woolem v. United States*, 2020 WL 2820140, at *5 (D. Haw. May 29, 2020) (holding that an inmate's asthma did not support early release because "the court cannot discern from the record the severity of his asthma").

Finally, Mau speculates that he might have cancer because he has "untreated bowel issues" and has not yet received a colonoscopy.  ECF No. 139, PageID # 61.  Again, Mau has not met his burden of showing that there is a significant probability that he has cancer.  He has not, for instance, submitted anything

---

could be at risk.  Hepatitis C is not specifically listed.  The CDC page dedicated to hepatitis C does not discuss whether hepatitis C might place someone at risk because of hepatitis C's effects on the immune system.

14

discussing the likelihood that a patient with his particular symptoms has cancer. Without such evidence, this court cannot conclude that it is likely that Mau has cancer simply because he has not received a colonoscopy.

In sum, based on the record before it, this court cannot conclude that Mau is at particular risk if he contracts COVID-19. Moreover, even if Mau's risk is somewhat elevated, Mau's history and disciplinary record weigh against a finding that extraordinary and compelling reasons justify a reduction in his sentence.

In 1995, Mau was convicted of conspiring to distribute more than 100 grams of methamphetamine and sentenced to 55 months in prison. ECF No. 114. He completed his prison term but in 2001 his supervised release status was twice revoked because of drug violations. *Id.* Neither revocation deterred Mau from further criminal activity, as the drug conspiracy alleged in the present case involved activity in 2003.

Moreover, as Mau admits, his disciplinary record while incarcerated is "atrocious." ECF No. 139, PageID # 64. Mau has been disciplined for 43 offenses during his 17 years of incarceration. His record includes disciplinary actions for disruptive conduct, phone abuse, forging documents, the destruction of property, and numerous drug offenses. ECF No. 139-5; *see also* ECF No. 145 at 313-16. That leaves this court

concerned that Mau will again violate the law if he is released early.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence.  In Mau's case, this court must consider the First Step Act's changes to the applicable mandatory minimums, the totality of the medical information Mau has submitted, Mau's criminal history, and his extensive and recent disciplinary record while incarcerated.  Based on the information Mau has submitted, this court cannot conclude that COVID-19 poses a heightened risk to Mau.  Moreover, this court cannot ignore Mau's disciplinary record while in prison.  Mau has not demonstrated that extraordinary and compelling reasons warrant a reduction in his sentence or would be consistent with the Sentencing Commission's policy statements.

**III. CONCLUSION.**

Mau's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, October 20, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

United States v. Mau, Cr. No. 03-00083-SOM-1; ORDER DENYING DEFENDANT CLINTON MAU'S MOTION FOR COMPASSIONATE RELEASE